United States District Court
Southern District of Texas
**ENTERED**
May 23, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NILSA MANAIZA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-4172 |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Nilsa Manaiza slipped and fell while working as a crew member aboard the M/V OCEAN GLORY, a privately owned ship that was under time charter to the United States. She alleges that she slipped and fell while going down the steps from the ship's galley to the freezer area, which she alleges had a "dangerous and unsafe condition" as well as other "other conditions of the vessel and/or actions and/or inactions on the part of the defendant" that made that part of the vessel unsafe. (Docket Entry No. 1 at 2). Manaiza sued the United States government, asserting Jones Act Liability. She alleges that the ship was owned and operated by the United States when she slipped, and that the United States has therefore waived sovereign immunity under the Suits in Admiralty Act, 46 U.S.C. § 30901-30918, and the Public Vessels Act, 46 U.S.C. § 31101-31113.

The government has moved for summary judgment. Based on the pleadings, the record, and the applicable law, the government's motion is granted. Manaiza's claim is not against the United States, which has sovereign immunity, but rather against the M/V OCEAN GLORY's owner or operator and her employer. The claims against the United States must be dismissed.

## I. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th

576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## II. Analysis

The time charter agreement for the M/V OCEAN GLORY included a standard form governing time charters for the shipment of dry cargo, "Dry Cargo Time Charter (DRYTIME—SPOT13.5)." (Docket Entry No. 17-2). The Drytime Agreement is a document used by the U.S. Navy Military Sealift Command and is incorporated into the contracts governing time charters with the United States. Under the Drytime Agreement, the vessel owners provide the vessel, manned, trained, and equipped. (Docket Entry No. 21 at 7). As to the crew, the vessel owner warrants that the ship has sufficient personnel with sufficient training and experience in the vessel's equipment. The crew members are deemed "servants and agents" of the vessel owner at all times. (Docket Entry No. 24 at 4). As the time charterer, the United States furnishes the ship's master with written sailing directions, and the master must be duly diligent in following the charterer's orders and direction. (Docket Entry No. 17-2, Drytime Agreement §§ IV(b)(2); II(o)(3)); III(d); III(c)).

The Military Sealift Command issued a Request for Proposal for a self-sustaining vessel capable of carrying ammunition to certain specifications. (Docket Entry No. 17-1 at 3). The RFP referred to the Command's Drytime Agreement. After some amendments to the Request for

Proposal, in June 2022, the Military Sealift Command awarded the time charter contract to Patriot Shipping, LLC. The contract provided that Patriot Shipping would provide the ship for a 64-day charter period; again, the contract referred to the Military Sealift Command's Drytime Agreement. (*Id.*).

The undisputed facts shown in this record do not show that the government waived its sovereign immunity for maritime claims under the Public Vessels Act, 46 U.S.C. § 30901-30918. The Public Vessels Act allows civil in personam liability actions to be brought against the United States for "damages caused by a public vessel of the United States." 46 U.S.C. § 31102(a)(1). The Act applies to vessels owned and operated by the United States. The undisputed facts in this record show that the OCEAN GLORY was not owned or operated by the United States; instead, it was a privately owned vessel that had been time chartered to the United States. *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1060 (5th Cir. 1989).

The Suits in Admiralty Act, 46 U.S.C. §§ 30901–30918, authorizes suits against the United States in admiralty cases if such claims could be brought against a private party in general maritime law. 46 U.S.C. § 30903(a). The issue is whether, under general maritime law, Manaiza could bring an admiralty suit against a private party.

The United States's liability to Manaiza depends on the type of charter agreement in place when Manaiza was hurt. The M/V OCEAN GLORY was under a time charter, a non-demise charter. The "non-demise charter does not vest nearly the same degree of control in its charterer" as a bareboat charter. *Forrester v. Ocean Marine Indemn. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993). "A time charter only entitles the charterer to the use of the vessel for a specified time. The vessel owner retains primary possession and control. Although a time charterer does direct the destinations of the vessel, he does not control the details of vessel operation required to reach those

destinations. As a non-demise charterer, the time charterer is thus not liable for claims of negligence of the crew or for the unseaworthiness of the vessel." *Id.*

Crucially, "[t]he responsibilities of a time charter are limited. The time charter is responsible for directing the commercial activity of the vessel, determining the ship's routes, directions, timing of the mission, and the designation of the cargo." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 373 (5th Cir. 2009). Under a time charter, it is "[t]he vessel owner" who "remains responsible for the seaworthiness of the vessel, dangerous conditions on board, navigational errors by the pilot and negligence by the crew." *Id.* Manaiza's claims are not about the routes or activity of the ship, but rather an allegedly dangerous condition on board.

On this record, the contract between the Military Sealift Command and Patriot Shipping was a time charter that included the Drytime Agreement. Maniaza was not hired by or an employee of the United States; she was part of the crew supplied by the vessel owner. There is no allegation that the United States committed some independent act of negligence that caused Maniaza's injuries. None of the evidence in the record shows that Patriot was an agent of the United States during the time charter. There is insufficient evidence that the United States exercised a significant degree of control over the vessel's operations. *Trautman v. Buck Steger, Inc.*, 693 F.2d 440, 445 (5th Cir. 1982). The time charter agreement here does not make Patriot Shipping an agent of the United States. Instead, the requirements and responsibilities on the vessel owner support the conclusion that the owner maintained operational control. *Williams*, 874 F.2d 1058.

No discovery is necessary to determine that, as a matter of law, United States did not consent to Patriot Shipping acting as its agent, nor did the United States exercise control over the M/V OCEAN GLORY greater than set out in the charter agreement. The United States's motion

for summary judgment, (Docket Entry No. 17), is granted. Final judgment will be separately entered.

SIGNED on May 23, 2024, at Houston, Texas.

Lee H. Rosenthal
United States District Judge